# UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS AUSTIN DIVISION

| | | |
|---|---|---|
| **JENNA GAUTREAUX,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **JAMIE MASTERS, in her official capacity** | § | **Case No. 1:21-cv-01166-LY** |
| **as Commissioner of Texas Department of** | § | |
| **Family and Protective Services,** | § | |
| *Defendant* | § | |

## REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE LEE YEAKEL**
  **UNITED STATES DISTRICT JUDGE**

Before the Court are Defendant Jamie Masters' Motion to Dismiss Plaintiff's First Amended Complaint, filed March 9, 2022 (Dkt. 19); Plaintiff's Response, filed March 30, 2022 (Dkt. 23); Defendant Jamie Masters' Reply, filed April 6, 2022 (Dkt. 24); and Plaintiff's Surresponse, filed April 13, 2022 by leave of Court (Dkt. 26-1). The District Court referred the Motion to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 25.

## I.    Background

In October 2019, Plaintiff Jenna Gautreaux and her husband, who live in Jefferson County, Texas, applied to be foster parents. Dkt. 14 (Plaintiff's First Amended Complaint) ¶ 19. The Texas Department of Family and Protective Services ("DFPS") asked the couple to identify their religion during the application process, and they identified themselves as practicing members of the Church of Jesus Christ of Latter-day Saints. *Id.* Gautreaux alleges that DFPS demonstrated "hostility

toward the Gautreauxes' religion" at their initial interview, while their follow-up interview "exclusively concerned the Gautreauxes' religious practices and beliefs." *Id.* ¶¶ 22-23.

The Gautreauxes were certified as foster parents in June 2020. *Id.* ¶ 24. Between August 5, 2020 and December 3, 2020, DFPS placed three foster children with them. *Id.* ¶ 27. In April 2021, DFPS removed the children from the Gautreauxes' home and began investigating an allegation of abuse against Jenna Gautreaux. *Id.* ¶ 28. On May 15, 2021, DFPS informed Gautreaux that the department had found there was "reason to believe" she had committed the alleged abuse, resulting in Gautreaux being placed on the DFPS central registry "as a child abuser." *Id.* ¶¶ 2, 31. Gautreaux alleges that DFPS's decision was motivated by religious "animus" and that there was no evidence of abuse to support the finding. *Id.* ¶¶ 30-31.

Gautreaux requested an Administrative Review of Investigative Findings to challenge DFPS's decision, which resulted in the finding being upheld. *Id.* ¶¶ 37-38. She then sought a hearing before an administrative law judge of the State Office of Administrative Hearings ("SOAH"), which SOAH told her would be delayed due to a backlog of DFPS cases. *Id.* ¶¶ 38-39. The Gautreauxes also participated in proceedings in the County Court at Law in Orange County, Texas, concerning the placement of the foster children. *Id.* ¶ 35. The parties dispute whether those proceedings resulted in a finding that Gautreaux did not commit the alleged abuse. *See id.*; Dkt. 19 at 9-10.

Gautreaux alleges that she is unable to practice her religion as a result of her placement on the DFPS central registry. Specifically, Gautreaux alleges that she cannot participate in her "calling" – an assignment made by Church leaders – which is to "teach singing to children in her local church." *Id.* ¶ 34. Gautreaux alleges that she was removed from her position and is prohibited from serving in any other calling involving children. *Id.*

Gautreaux filed this suit against DFPS and DFPS Commissioner Jamie Masters. On February 23, 2022, Gautreaux filed her First Amended Complaint against Masters only, seeking a declaratory judgment that Masters violated her rights under the United States and Texas constitutions and the Texas Religious Freedom Restoration Act, TEX. CIV. PRAC. & REM. CODE § 110.001 *et seq.* Gautreaux asks the Court to enjoin Masters from (1) requiring prospective foster parents to identify their religion and describe their religious beliefs and practices; (2) analyzing prospective foster parents' religious beliefs and practices; and (3) considering religious beliefs and practices as a concern or factor in abuse or neglect investigations. She also asks the Court to order Masters to remove her from the DFPS central registry pending a due process hearing on DFPS's "reason to believe" finding and to set a due process hearing on that finding. *Id.* Gautreaux seeks compensatory damages, fees, and costs.

Masters moves to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). Masters argues that the Court does not have subject matter jurisdiction because Gautreaux lacks standing and her claims are barred by sovereign immunity. Masters further argues that the Court should apply *Younger* abstention and dismiss this case. Alternatively, Masters argues that Gautreaux has failed to state a claim for a due process or First Amendment violation.

## II.    Rule 12(b)(1)

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Rule 12(b)(1) allows a party to assert lack of subject matter jurisdiction as a defense to suit. A federal court properly dismisses a case for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Hooks v. Landmark Indus., Inc.*, 797

F.3d 309, 312 (5th Cir. 2015). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming*, 281 F.3d at 161.

In deciding a Rule 12(b)(1) motion, the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Id.* The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.*

A court's dismissal of a case due to a lack of subject matter jurisdiction is "not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Id.* Accordingly, such a dismissal should be made without prejudice. *Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020).

### III.    Jurisdiction

The Court first addresses the threshold issue of jurisdiction. *Steel Co.*, 523 U.S. at 88-89, 102. Federal district courts are courts of limited jurisdiction and may exercise only such power as is expressly conferred by the Constitution and federal statutes, "which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). An Article III court must assure itself of its own jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88-89 (1998). A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States" and over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties. U.S. CONST. art. III, § 2; 28 U.S.C. §§ 1331, 1332. It is to be presumed that a case lies outside this limited jurisdiction, and the burden of establishing the contrary rests on the party asserting jurisdiction. *Kokkonen*, 511 U.S. at 377.

Article III of the United States Constitution confines the federal judicial power to the resolution of "Cases" and "Controversies." U.S. Const. art. III, § 2. For a case or controversy to exist under Article III, the plaintiff must have a "personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). To establish standing, a plaintiff must show that (1) she suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) the injury likely was caused by the defendant; and (3) the injury likely would be redressed by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

As discussed *infra*, Masters moves to dismiss based on the applicability of the *Younger* abstention doctrine. A court's decision to abstain under *Younger*, however, is not jurisdictional. As the Fifth Circuit has explained: "Federal courts do not abstain on *Younger* grounds because they lack jurisdiction; rather, *Younger* abstention reflects a court's prudential decision not to exercise [equity] jurisdiction which it in fact possesses." *Weekly v. Morrow*, 204 F.3d 613, 614-15 (5th Cir. 2000) (internal quotation marks omitted); *but see Lively v. Tharp*, No. 5:20-CV-1311-OLG, 2021 WL 2930090, at *2 n.1 (W.D. Tex. June 29, 2021) (stating that some courts allow *Younger* abstention arguments to be raised through a Rule 12(b)(1) motion); 5B Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 1350 n.12 (3d ed. Apr. 2021 Update) (collecting cases in which courts have allowed abstention arguments raised under Rule 12(b)(1)). Therefore, the Court considers Masters' *Younger* argument under Rule 12(b)(6) after her jurisdictional challenges.

## A. Standing

Masters raises two challenges to Gautreaux's standing. First, Masters argues that Gautreaux was not injured by DFPS maintaining her name on the central registry because, contrary to Gautreaux's assertion, no court has found that Gautreaux did not commit the alleged abuse.

Second, Masters argues that Gautreaux does not have standing to raise claims on behalf of third-party prospective foster parents.

Gautreaux responds that the injury she asserts is the failure of DFPS to provide her the protections guaranteed by the First and Fourteenth Amendment. She also disputes Masters' interpretation of the relevant court proceedings, asserting that the Orange County court that presided over the foster children's placement proceedings found that Gautreaux did not commit child abuse. Gautreaux disclaims any assertion of third-party standing.

The Court finds that Gautreaux has standing because she has alleged the injuries of infringement of her rights to free exercise of religion and due process. Masters challenges the merits of Gautreaux's claims, but standing is "a threshold inquiry that in no way depends on the merits of the case." *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 31 (1993) (per curiam) (quotation marks omitted). Even if the Court ultimately determines that the county court did not make a finding regarding whether Gautreaux committed the alleged abuse, Gautreaux's standing to pursue her due process claim does not depend on her correct interpretation of the county court's decision. *Steel*, 523 U.S. at 89 ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case."). Accordingly, Gautreaux has properly alleged injuries – infringement of her right to free exercise and due process – to support standing.

## B. Sovereign Immunity

The Eleventh Amendment provides that: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Eleventh Amendment codified the sovereign immunity of the states. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997).

> Sovereign immunity is the privilege of the sovereign not to be sued
> without its consent. . . . A State may waive its sovereign immunity at
> its pleasure, and in some circumstances, Congress may abrogate it by
> appropriate legislation. But absent waiver or valid abrogation, federal
> courts may not entertain a private person's suit against a State.

*Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253-54 (2011) (citations and footnotes omitted).

Sovereign immunity applies not only to actions in which a state itself is the named defendant, but also to actions against state agencies and instrumentalities. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997). A suit "against an arm or instrumentality of the State is treated as one against the State itself." *Lewis v. Clarke*, 137 S. Ct. 1285, 1293 (2017). Similarly, lawsuits brought against employees in their official capacity "represent only another way of pleading an action against an entity of which an officer is an agent," and they also may be barred by sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985). "In short, Eleventh Amendment immunity is not limited to cases in which states are named as defendants. So, unless the state has waived sovereign immunity or Congress has expressly abrogated it, the Eleventh Amendment bars the suit." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 1047 (2021). Courts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit. *Lewis*, 137 S. Ct. at 1290. In making this assessment, courts "may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Id.*

Bearing these principles in mind, the Court addresses its jurisdiction over Gautreaux's federal and state law claims in turn.

### 1. Federal Claims

Masters argues that Gautreaux has not satisfied the *Ex parte Young* exception to sovereign immunity. First, Masters contends that she does not have the requisite connection to the challenged

act because a different agency, the Health and Human Services Commission, enforces the law requiring an inquiry into prospective foster parents' religion. Second, Masters argues that Gautreaux fails to allege an ongoing violation of federal law because her claims involving DFPS's foster parent screening process concern a "violation that occurred entirely in the past." Dkt. 19 at 8. Third, Masters asserts that she did not cause Gautreaux's injury resulting from the failure to set a SOAH hearing because SOAH is an independent state agency. Gautreaux responds that examination of foster parents' religious beliefs is not mandated by state law. She further asserts that DFPS may have contributed to the refusal to set a SOAH hearing, and, alternatively, asks the Court for permission to amend her complaint to add SOAH as a defendant.

As the Commissioner of a state agency, Masters is entitled to sovereign immunity unless an exception to that doctrine applies. *See Haverkamp v. Linthicum*, 6 F.4th 662, 669 (5th Cir. 2021) (stating that sovereign immunity bars suits against state actors in their official capacities that effectively are suits against a state). In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court created a limited exception to sovereign immunity under which "a litigant may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020). "The exception rests on a legal fiction, the premise that a state official is 'not the State for sovereign-immunity purposes' when 'a federal court commands [him or her] to do nothing more than refrain from violating federal law.'" *Id.* (quoting *Va. Off. for Prot. & Advoc.*, 563 U.S. at 257). Therefore, the Court must consider whether Gautreaux's claims satisfy the requirements of the *Ex parte Young* exception.

For *Ex parte Young* to apply, the plaintiff must: (1) name individual state officials as defendants in their official capacities; (2) allege an ongoing violation of federal law; and (3) seek relief properly characterized as prospective. *Green Valley Special Util. Dist. v. City of Schertz, Tex.*, 969

F.3d 460, 471 (5th Cir. 2020) (citations omitted). In addition, the state officer named in the suit "must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Young*, 209 U.S. at 157. To determine whether the exception applies, courts conduct a "straightforward inquiry" and do not consider the merits of the underlying claims. *Green Valley*, 969 F.3d at 471.

### a. State Officials Sued in their Official Capacities

Gautreaux has properly asserted her claims against Masters, a state official, in her official capacity. *Ex parte Young*, however, further requires that the state official be sufficiently connected to the challenged act. *Haverkamp*, 6 F.4th at 670. This is because "allowing state officers to be sued in lieu of the State absent some 'special connection' would permit the narrow [*Ex parte Young*] exception to swallow the fundamental, constitutionally-based rule." *Okpalobi v. Foster*, 244 F.3d 405, 413 (5th Cir. 2001).

Gautreaux has failed to assert any connection between Masters and SOAH's failure to set a hearing within a reasonable amount of time, one of the bases of Gautreaux's due process claims. SOAH is "an independent forum" that conducts "adjudicative hearings in the executive branch of state government." TEX. GOV'T CODE § 2003.021(a). Gautreaux has alleged no facts supporting a connection between Masters and SOAH's operations. *See Paxton*, 943 F.3d at 1002 (requiring "some scintilla" of connection between state official and challenged law). For the same reason, Gautreaux also fails the causation requirement of Article III standing. *Id.* (stating there is "significant[] overlap" between Article III standing and *Ex parte Young* analysis). Here, any injury resulting from the failure to set a SOAH hearing is not "fairly traceable" to Masters, who has no

authority over SOAH's schedule. *Lujan*, 504 U.S. at 560. For these reasons, the Court finds that Gautreaux cannot pursue her due process claim for failure to set a hearing against Masters.[1]

Masters further argues that she does not enforce the state law requiring an inquiry into the religious beliefs of potential foster parents and therefore is not the proper defendant under *Ex parte Young*. Specifically, Masters asserts that Health and Human Services Commission, not DFPS, "set[s] forth the rules that apply to child-placing agencies" 26 TEX. ADMIN. CODE § 749.1. This argument misconstrues Gautreaux's claims. Gautreaux does not challenge the constitutionality of that law, but instead argues that DFPS has a policy of inquiring into foster parents' religious beliefs, rather than their attitudes about a foster child's religion. As Commissioner, Masters is the "department's chief administrative officer" and statutorily tasked with "adopt[ing] rules and policies for the operation of and the provision of services by the department." TEX. HUM. RES. CODE § 40.027(e). The Court therefore finds that Masters is a proper defendant for the claim that DFPS's screening policy violates the Free Exercise Clause.

### b.  Ongoing Violation of Federal Law

The *Ex parte Young* exception requires allegations that "a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past." *Spec's Family Partners, Ltd. v. Nettles*, 972 F.3d 671, 681 (5th Cir. 2020). "The fact that a current violation can be traced to a past action does not bar relief." *Williams*, 954 F.3d at 738. A violation can be considered ongoing if plaintiff's constitutional rights are currently infringed based on action or inaction of officials. *See NiGen Biotech, L.L.C. v. Paxton*,

---

[1] The Court further finds that Gautreaux's request to amend her complaint to add SOAH should be denied as futile based on the Court's recommendation *infra* that the District Court apply the *Younger* abstention doctrine. *McNatt v. Texas*, 37 F.3d 629 (5th Cir. 1994) (stating that "any amendment of [plaintiff's] claims for injunctive or declaratory relief against the pending criminal proceeding would have been futile under *Younger*").

804 F.3d 389, 394 (5th Cir. 2015) (finding ongoing violation where attorney general's "continued refusal" to justify past actions infringed on the plaintiff's First Amendment rights).

Masters disputes that Gautreaux's challenge to the foster parent screening process presents an ongoing violation. The Court agrees that it does not. Despite the alleged discrimination, the Gautreauxes were certified as foster parents in 2019. Gautreaux does not allege any ongoing violation of her rights related to this claim or assert third-party standing to challenge the policy's enforcement against prospective foster parents. Therefore, this claim does not allege the ongoing violation required under *Ex parte Young*.

Gautreaux's other claims properly allege ongoing violations of her due process and free exercise rights. Gautreaux contends that she was placed on the central registry based on DFPS's discriminatory policies and that her inclusion on the registry violates her right to free exercise. She further asserts that a different DFPS policy inhibits her ability to remove herself from the central registry and violates her due process rights. Gautreaux's allegations that current agency policies are presently infringing her constitutional rights satisfy the ongoing violation requirement of *Ex parte Young*. *See NiGen Biotech*, 804 F.3d at 394; *Shah v. Univ. of Tex. Sw. Med. Sch.*, 129 F. Supp. 3d 480, 496 (N.D. Tex. 2015), *aff'd*, 668 Fed. App'x. 88 (5th Cir. 2016) (finding that a threat of dissemination of information to third parties that continued to deprive plaintiff of constitutional rights constituted ongoing violation).[2]

### c.  Prospective Relief

Gautreaux also must seek relief that is "declaratory or injunctive in nature and prospective in effect." *Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992). In deciding whether

---

[2] *See also Mumford v. Thomas*, No. 1:18CV83, 2019 WL 266954, at *2 (M.D.N.C. Jan. 18, 2019) (holding that wrongful inclusion on sex offender registry constituted ongoing violation); *Doe v. Caldwell,* 913 F. Supp. 2d 262, 273 (E.D. La. 2012) (holding that failure to remedy equal protection violation by removing plaintiffs from sex offender registry constituted ongoing violation).

the relief sought is prospective, courts "look to the substance rather than to the form of the relief sought." *Papasan v. Allain*, 478 U.S. 265, 279 (1986) (citation omitted). A "backwards-looking, past-tense declaratory judgment" is "tantamount to an award of damages for a past violation of law, even though styled as something else." *Freedom From Religion Found. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020) (quoting *Papasan*, 478 U.S. at 278). "As long as the claim seeks prospective relief for ongoing harm, the fact that a current violation can be traced to a past action does not bar relief." *Williams*, 954 F.3d at 738.

In her First Amended Complaint, Gautreaux asks the Court to make the following declarations as to her federal claims:

(1) DFPS's adoption and enforcement of its policy of analyzing prospective foster parents' religious beliefs and practices violates the Free Exercise Clause;

(2) DFPS's investigation of Plaintiff violates the Free Exercise Clause;

(3) DFPS's adoption and enforcement of its policy of including religious beliefs and practices as a concern or factor in an abuse or neglect investigation violate the Free Exercise Clause;

(4) DFPS's failure and refusal to provide Plaintiff an opportunity to be heard at a meaningful time violate the Due Process Clauses; and

(5) DFPS's adoption and enforcement of its policy regarding administrative review of a "reason to believe" finding violate the Due Process Clauses.

Dkt. 14 ¶¶ 63-66, 70-71. Gautreaux also asks the Court to enjoin Masters from enforcing those policies, instruct Masters to remove Gautreaux from the central registry, and set a due process hearing. *Id.* ¶ 72.

A declaration that a state agency's current policies violate the Constitution, which are presently harming the plaintiff, is properly characterized as prospective under *Ex parte Young*. *See Williams*, 954 F.3d at 738 (holding that plaintiffs could seek declaratory relief based on their allegations that "school children *today* are deprived of their school rights" by a law presently enforced by the defendants). A declaratory judgment and injunction concerning the policies that Gautreaux claims

12

are presently violating her constitutional rights can properly be characterized as prospective. *Id.* Gautreaux's request that the Court instruct Masters to remove her from the central registry and set a due process hearing is relief that, "if awarded, would redress an ongoing violation of [plaintiff's] rights" and therefore satisfies the "straightforward inquiry." *Green Valley*, 969 F.3d at 473 (citing *Va. Off. for Prot. & Advocacy*, 563 U.S. at 255).

The Court does not find that all of the relief requested is prospective, however. A declaration that DFPS's investigation violated the Free Exercise Clause would be retrospective because it would amount to sanctioning past conduct. *See Spec's Fam. Partners*, 972 F.3d at 681 (finding that *Ex parte Young* exception was not met where plaintiff sought declaratory relief against TABC officials because plaintiff focused on past behavior and did not allege that officials were "currently engaged in any of those behaviors or that any such actions are imminent"). Again, there is no ongoing harm to remedy in relation to DFPS's foster parent screening process, so any declaration related to it would be retrospective and thus outside the bounds of *Ex parte Young*. *See Freedom From Religion Found.*, 955 F.3d at 426 (stating that the possibility declaratory judgment "could have some future effect by clarifying the contours of [constitutional rights] and deterring similar actions by the state" is insufficient because "compensatory or deterrence interests" cannot overcome Eleventh Amendment). As Gautreaux concedes, she does not have third-party standing to enjoin the policy from being applied to prospective foster parents.

### d. Conclusion as to Federal Claims

Gautreaux's claim that DFPS violated her due process rights by failing to set a SOAH hearing in a reasonable amount of time is barred by sovereign immunity and standing principles because Masters lacks any connection to the challenged acts. Furthermore, sovereign immunity bars Gautreaux's claims that Masters violated her right to free exercise of religion during the foster parent screening process because Gautreaux has not alleged an ongoing violation of federal law or

requested prospective relief. Likewise, Masters' claim that the investigation violated her right to free exercise is barred because it does not request prospective relief. Gautreaux's remaining claims – her free exercise claim challenging DFPS's policy of including religion as a concern in abuse investigations and her free exercise and due process claims[3] challenging DFPS's policy regarding inconsistent court rulings – satisfy the requirements of *Ex parte Young*.

### 2. State Claims

Masters next argues that Gautreaux's state law claims are barred by sovereign immunity because Texas has not waived its sovereign immunity in federal court.[4] The Court agrees.

The Eleventh Amendment prohibits federal courts from granting relief against a state on the basis of state law. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 322 n.5 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011). A state may waive its sovereign immunity and consent to suit in federal court, but the waiver must be "unequivocally expressed." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984). Neither Gautreaux's claim under the Texas Religious Freedom Restoration Act ("TRFRA") nor her claim under the Texas Constitution satisfies this stringent requirement.

The TRFRA expressly retains Texas's sovereign immunity under the Eleventh Amendment. TEX. CIV. PRAC. & REM. CODE 110.008(b) ("[T]his chapter does not waive or abolish sovereign immunity to suit and from liability under the Eleventh Amendment to the United States Constitution."). The TRFRA does include a limited waiver of sovereign immunity in state court, but that provision does not waive sovereign immunity in federal court. *See Perez v. Region 20*

---

[3] Gautreaux asserted claims under the Due Process Clauses of the Fifth and Fourteenth Amendments. The Fifth Amendment, however, "applies only to violations of constitutional rights by the United States or a federal actor." *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). Because Gautreaux brings claims only against state actors, her claims must proceed under the Fourteenth Amendment.

[4] Gautreaux does not respond to this argument.

*Educ. Serv. Cntr.*, 307 F.3d 318, 332 (5th Cir. 2002) ("A state's waiver of sovereign immunity in state court does not mean the state has waived Eleventh Amendment immunity in federal court."); *Sherwinski v. Peterson*, 98 F.3d 849, 851-52 (5th Cir. 1996) ("A state does not waive Eleventh Amendment immunity in federal courts merely by waiving sovereign immunity in its own courts."). The Court finds that Texas has not expressly waived its sovereign immunity under TRFRA in federal court. *Accord McKennie v. Tex. Dep't of Criminal Justice*, No. A-09-CA-906-LY, 2011 WL 13237553, at *3 (W.D. Tex. May 24, 2011) (holding that Eleventh Amendment bars TRFRA claims); *see also Johnson v. Wainwright*, No. 2:19-CV-341, 2020 WL 6431910, at *5 (S.D. Tex. Sept. 23, 2020), *R. & R. adopted*, No. 2:19-CV-341, 2020 WL 6392382 (S.D. Tex. Nov. 2, 2020) (same).

Similarly, Texas has not waived its sovereign immunity from Gautreaux's claim under the Texas Constitution. Courts have held that a constitutional-based waiver is applicable only to Article I, Section 17 of the Texas Constitution. *Doe v. Univ. of Tex. at Austin*, No. 1:19-CV-398-LY, 2019 WL 9076003, at *4 (W.D. Tex. Nov. 8, 2019); *Banik v. Tamez*, No. 7:16-CV-00462, 2017 WL 2505653, at *26 (S.D. Tex. June 9, 2017); *Idoux v. Lamar Univ. Sys.*, 817 F. Supp. 637, 641 (E.D. Tex. 1993). Gautreaux alleges a violation of Article 2, Section 1 of the Texas Constitution. Because there is no constitutional-based waiver and Gautreaux alleges no other source of waiver, her claims under the Texas Constitution also are barred by sovereign immunity.

## IV.    *Younger* Abstention

Masters also contends that Gautreaux's claims should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction based on the abstention doctrine established by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971).

A court's duty to exercise the jurisdiction given to it is not absolute. Federal courts "may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a

federal forum would clearly serve an important countervailing interest, for example, where abstention is warranted by considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (cleaned up).

In *Younger v. Harris*, 401 U.S. 37, 45 (1971), the Court held that, absent "extraordinary circumstances where the danger of immediate loss is both great and immediate," federal courts should not enjoin pending state criminal prosecutions. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 600 (1975). The decision to abstain "was based partly on traditional principles of equity, but rested primarily on the 'even more vital consideration of comity.'" *New Orleans Pub. Serv., Inc. ("NOPSI") v. Council of City of New Orleans*, 491 U.S. 350, 364 (1989) (quoting *Younger*, 401 U.S. at 44). This includes

> a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Id.*

The Court has expanded *Younger* beyond state criminal prosecutions to certain civil enforcement proceedings and civil proceedings "involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013). If the case falls into one of those categories, courts apply the factors outlined in *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982), which suggest abstention where: "(1) the dispute involves an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges." *Zadeh v. Robinson*, 928 F.3d 457, 472 (5th Cir. 2019) (cleaned up). The *Middlesex* factors should

16

be considered only after it has been determined that the state proceeding is in one of the three categories to which *Younger* abstention applies. *See Sprint*, 571 U.S. at 81-82. A party must exhaust her state appellate remedies before seeking relief in the District Court, unless her case is within one of the exceptions specified in *Younger*. *Huffman*, 420 U.S. at 608.

## A. The Requirements for *Younger* Abstention Are Satisfied

This case involves the second category of proceedings to which *Younger* applies: civil enforcement proceedings that are "akin to a criminal prosecution" in "important respects." *Sprint*, 571 U.S. at 79 (quoting *Huffman*, 420 U.S. at 604). In *Moore v. Sims*, 442 U.S. 415 (1979), the Supreme Court held that *Younger* applied to an action challenging Texas's child abuse statutes because there was an ongoing civil proceeding involving the temporary removal of a child. The Court reasoned that the state was a party to the state proceeding and the proceeding was "in aid of and closely related to criminal statutes." *Id.* at 423. When declining to apply *Younger* in *Sprint*, the Court noted that the proceeding was not "initiated by the State in its sovereign capacity," and "[n]o state authority conducted an investigation" or "lodged a formal complaint" against the plaintiff. *Sprint*, 571 U.S. at 80. In this case, DFPS's investigation was in aid of and closely related to the same criminal statutes at issue in *Moore*. As relevant in *Sprint*, DFPS also conducted an investigation into Gautreaux and remains a party to proceedings.

Because *Younger* applies to this category of proceeding, the Court must consider whether the three *Middlesex* factors are met.

### 1. This Dispute Involves an Ongoing State Judicial Proceeding

Gautreaux argues that because she, not DFPS, initiated the hearing before SOAH and the SOAH hearing has been "indefinitely postponed," there is no ongoing judicial proceeding. For abstention purposes, a proceeding is ongoing if a state action has begun and "the state court appeals are not exhausted at the time of the federal filing." *DeSpain v. Johnston*, 731 F.2d 1171, 1178

(5th Cir. 1984). When Gautreaux filed her federal complaint on December 22, 2021, the Administrative Review of Investigative Findings had upheld DFPS's finding that there was "reason to believe" Gautreaux abused her foster child, and Gautreaux's request for a hearing before SOAH was pending.[5]

The multistep nature of the state administrative process does not undermine application of *Younger*. Gautreaux's claim of excessive delay should be raised in the underlying proceeding, and its relevance is limited to the bad-faith exception discussed below. *See Moore*, 442 U.S. at 432 (stating that delay is indistinguishable from conventional claims of bad faith); *Wilcox v. Miller*, 691 F.2d 739, 741 (5th Cir. 1982) (holding that plaintiff's claims regarding unreasonable delays could be raised in pending criminal appeal and therefore *Younger* applied). At the time of suit, there was an ongoing state judicial proceeding, satisfying the first *Middlesex* factor.

## 2.   The State Has an Important Interest in Regulating the Subject Matter of This Claim

For federal abstention, the ongoing proceeding also must implicate important state interests. *DeSpain*, 731 F.2d at 1179. The Court "repeatedly has recognized that the States have important interests in administering certain aspects of their judicial systems." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 12-13 (1987); *see also Texas Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 508 (5th Cir. 2021) ("*Younger* counsels that federal courts should abstain from interfering with states' enforcement of their laws and judicial functions."). Family relations and child welfare are traditional areas of state concern. *DeSpain*, 731 F.2d at 1179. Furthermore, the investigation of child abuse and neglect is

---

[5] Under Texas Family Code §261.002(b)(3), the department is required to remove an individual from the registry if the "reason to believe" finding against them is overturned by: (1) an administrative review conducted under the department's established process for reviewing complaints; (2) a review or appeal of a review conducted by the department's office of consumer affairs; or (3) a hearing or appeal before SOAH. A person "who has exhausted all administrative remedies available within a state agency and who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter." TEX. GOV'T CODE § 2001.171.

"in aid of and closely related to criminal statutes," and the state's interest is "heightened" where the state is a party to the proceeding. *Id.* at 1179-80 (quoting *Huffman*, 420 U.S. at 605).

Gautreaux argues that no comity issue arises because Texas has voluntarily submitted its child welfare system to federal oversight and regulation. The two cases Gautreaux cites in support of this contention are inapposite. In both *M.D. v. Perry*, 799 F. Supp. 2d 712 (S.D. Tex. 2011), and *Dwayne B. ex rel. Stempfle v. Granholm*, No. 06-13548, 2007 WL 1140920 (E.D. Mich. Apr. 17, 2007), the plaintiff brought a class action seeking large-scale injunctive and declaratory relief, and the court found that the suit would not interfere with any state proceeding. *M.D.*, 799 F. Supp. 2d at 719, 726; *Dwayne B.*, 2007 WL 1140920, at *6-7. These cases do not undermine *Younger*'s application here because Gautreaux's requested relief would directly interfere with a specific ongoing proceeding. Therefore, the second *Middlesex* factor is satisfied.

### 3.   State Proceedings Offer an Adequate Opportunity to Raise Constitutional Challenges

The third and final *Middlesex* factor is satisfied because the state judicial proceeding provides an adequate opportunity to raise federal challenges. In the context of abstention, a federal court should not exert jurisdiction if the plaintiffs "had an *opportunity* to present their federal claims in the state proceedings." *Moore*, 442 U.S. at 425. Thus, "abstention is appropriate unless state law clearly bars the interposition of the constitutional claims." *Id.* at 425-26. Article VI of the Constitution states that "the Judges in every State shall be bound" by the Federal Constitution, laws, and treaties. "We cannot assume that state judges will interpret ambiguities in state procedural law to bar presentation of federal claims." *Pennzoil Co.*, 481 U.S. at 15. It is sufficient for *Younger* purposes that Gautreaux is able to raise any constitutional challenges in an appeal to the state court. *Zadeh*, 928 F.3d at 472-73. Accordingly, the third *Middlesex* factor is satisfied.

The unpublished case on which Gautreaux relies, *Saloom v. Tex. Dep't of Family & Child Protective Servs.*, 578 Fed. App'x. 426, 427 (5th Cir. 2014), is readily distinguishable. In *Saloom*,

the Fifth Circuit held that the district court erred in applying the *Younger* abstention doctrine because the plaintiff's claims were primarily for monetary damages, which are not barred by *Younger*. Unlike the plaintiff in *Saloom*, Gautreaux has no claims for monetary relief because such claims are barred by sovereign immunity. In *Saloom*, moreover, the court held that the federal lawsuit "could not conceivably interfere with the state court's custody proceedings." 578 Fed. App'x. at 429. In contrast, in this case and in the ongoing administrative proceedings, DFPS's abuse finding is at issue. Granting any of Gautreaux's requested relief would necessarily interfere with those proceedings.

Because all three of the *Younger* factors are met, the *Younger* abstention doctrine applies, and the Court must abstain from hearing this case unless one of the narrowly delimited exceptions to the abstention doctrine applies. *Texas Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004).

**B.  No Exception to *Younger* Abstention Applies**

*Younger* and its progeny allow federal intervention if a court finds that one of its exceptions has been met. Courts may intervene if "the state proceeding is motivated by a desire to harass or is conducted in bad faith" or "the challenged statute is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph." *Huffman*, 420 U.S. at 611 (internal quotation marks omitted).

Gautreaux argues that the bad faith exception applies, which she has the burden to establish by actual proof. *Gates v. Strain*, 885 F.3d 874, 881 (5th Cir. 2018). "The bad faith exception is narrow and is to be granted parsimoniously." *Wightman v. Tex. Supreme Ct.*, 84 F.3d 188, 190 (5th Cir. 1996). The *Younger* exception for bad faith prosecutions is applied primarily in two circumstances: when a state commences a prosecution or proceeding to retaliate for or deter constitutionally protected conduct, or when the prosecution or proceeding is taken in bad faith or for the purpose to harass. *Bishop v. State Bar of Texas*, 736 F.2d 292, 294 (5th Cir. 1984).

20

> To invoke this exception, the federal plaintiff must show the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive. Mere conclusory allegations of bias are insufficient to overcome *Younger*—a plaintiff seeking to avoid *Younger* must affirmatively demonstrate the justification for application of an exception.

*Malone v. Dutton*, No. A-16-CA-1183-SS, 2017 WL 4399564, at *4 (W.D. Tex. Oct. 3, 2017) (citations omitted), *appeal dismissed*, 2017 WL 9249944 (5th Cir. Dec. 6, 2017).

Gautreaux argues that "DFPS has used the process (and the lack thereof) to persecute Gautreaux, to deny her First Amendment rights and the entire process to this point was not fair or reasonable due to DFPS employees' religious discrimination." Dkt. 26-1 at 5 n.8. Gautreaux has not demonstrated that DFPS commenced the proceeding solely to suppress her right to the free exercise of religion, with no hope of ultimate success. *See Younger*, 401 U.S. at 49 ("There is no suggestion that this single prosecution against [defendant] is brought in bad faith or is only one of a series of repeated prosecutions to which he will be subjected.").

Gautreaux admits that the investigation began after DFPS received a report of child abuse. Dkt. 14 ¶ 2. She has presented no evidence that the DFPS investigation was "initiated without hope of obtaining a valid conviction." *Gates*, 885 F.3d at 881. Nor has she alleged facts suggesting that the delay in setting a SOAH hearing can be attributed to anything other than administrative backlog. *Wightman*, 84 F.3d at 191 (finding that bad faith exception was not met where plaintiff did not offer "some proof" and record indicated "adherence to standard procedure").

Because none of the exceptions apply here, the undersigned Magistrate Judge recommends that the District Court abstain from exercising jurisdiction under *Younger* and dismiss this case without prejudice under Rule 12(b)(6). *See Blakely v. Andrade*, 360 F. Supp. 3d 453, 471 (N.D. Tex. 2019) (stating that dismissal based on *Younger* should be without prejudice). Accordingly,

the Court does not address the merits of Gautreaux's claims. *Bice v. Louisiana Pub. Def. Bd.*, 677 F.3d 712, 720 (5th Cir. 2012).

## V.     Recommendation

For the foregoing reason, the undersigned Magistrate Judge **RECOMMENDS** that the District Court abstain from exercising jurisdiction under the *Younger* abstention doctrine and **DISMISS** this case **WITHOUT PREJUDICE**.

In the alternative, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendant Jamie Masters' Motion to Dismiss Plaintiff's First Amended Complaint (Dkt. 19). The Court **RECOMMENDS** that the District Court GRANT the Motion under Rule 12(b)(1) and **DISMISS WITHOUT PREJUDICE** the following of Gautreaux's claims for lack of subject matter jurisdiction:

1. The free exercise claims challenging DFPS's investigation and policy regarding prospective foster parents (Count 1 ¶¶ 45, 46);
2. The due process claim challenging the failure to set a SOAH hearing at a meaningful time (Count 3 ¶¶ 57, 59); and
3. All claims alleging violations of the TRFRA and the Texas Constitution (Counts 2 and 4).

The Court further **RECOMMENDS** that the District Court **DENY** the Motion under Rule 12(b)(1) as to Gautreaux's claims challenging DFPS's policies of (1) considering religious beliefs and practices as a concern in abuse investigations (Count 1 ¶ 46), and (2) treating consistent court rulings as binding but disregarding inconsistent court rulings (Count 1 ¶ 47; Count 3 ¶¶ 56, 58).

It is **FURTHER ORDERED** that the Clerk remove this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Lee Yeakel.

## VI.     Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made.

The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on August 29, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE